CLARK, J.,
dissents with opinion.
I disagree and would reverse the convictions for aggravated manslaughter of a *250 child because the State failed to present a prima facie case of aggravated manslaughter by culpable negligence. The denial of Appellant’s motion for judgment of acquittal (“JOA”) was reversible error.
While “culpable negligence” is not defined by statute, courts have established a case-law definition. Culpable negligence is reserved for egregious acts: “consciously doing an act which a reasonable person would know is likely to result in death or great bodily harm to another person, even though done without any intent to injure anyone but with utter disregard for the safety of another.” Arnold v. State, 755 So.2d 796, 797 (Fla. 2d DCA 2000) (quoting Azima v. State, 480 So.2d 184, 186 (Fla. 2d DCA 1985)). It is also reserved for acts of “a gross and flagrant character, evincing reckless disregard of human life or of the safety of persons exposed to its dangerous effects.” Arnold v. State, 755 So.2d 796, 797 (Fla. 2d DCA 2000) (quoting State v. Greene, 348 So.2d 3 (Fla.1977)). Culpable negligence requires “that entire want of care which would raise the presumption of indifference to consequences; or such wantonness or recklessness or grossly careless disregard of the safety and welfare of the public, or that reckless indifference to the rights of others, which is equivalent to an intentional violation of them.” Arnold v. State, 755 So.2d 796, 797 (Fla. 2d DCA 2000) (quoting State v. Greene, 348 So.2d 3 (Fla.1977)).
To withstand the motion for JOA, the State’s evidence was required to support a prima facie case for each element of the charged offense, aggravated manslaughter of a child (§ 782.07(3), Fla. Stat.) by culpable negligence (§ 827.03(3), Fla. Stat.). It is well-settled that in ruling on a motion for JOA, the evidence must be considered in the light most favorable to the State. However, the light most favorable to the State means that conflicts in the evidence are resolved in favor of the State’s position, not that we disregard the portions of the State’s evidence which make the State’s case weaker, or might support the defense.
At the close of the State’s case, the evidence was insufficient to prove a prima facie case that Appellant’s negligence exceeded mere negligence and constituted the gross and flagrant actions demonstrating a reckless disregard for the life of her children such that her actions could be considered equivalent to an intent that her children be severely injured or killed. In addition to the facts emphasized by the majority, the State’s witnesses, Investigators Medina and Hinton, each testified that Appellant told them she voluntarily left her children at home alone at approximately 6:30 to 7:00 p.m. to report for a night shift at Shands Hospital. They explained she only did this after she had called her husband at his work at a nursing home when Appellant learned that she was called in to work a shift that night. According to their testimony, she also told both officers that she told her husband to come home to watch the children, and that he assured her he was close to home and would arrive in a few minutes, or five minutes. At the time Appellant made these statements to the officers, she did not know the children were dead and had no opportunity to coordinate her story with her husband.
Officer Hinton testified that the father’s statement to him was consistent with Appellant’s — that the parents had communicated around 6:30 p.m. and that he had told her to go ahead and leave for work because he would be there shortly. This testimony of the State’s witnesses was not direct evidence of Appellant’s state of mind at the time she left her children alone, but it did constitute indirect evidence of Appel *251 lant’s lack of wanton or reckless disregard for the safety of the children.
The State presented no evidence that conditions in the home itself were dangerous or that the neighbors or anyone else had ever observed Appellant acting with reckless indifference regarding the children’s safety. There was no evidence that Appellant knew the children would leave the home (or that they ever had), that they were capable of making their way to the neighbor’s swimming pool, or were capable of climbing over the fence to gain access to the neighbor’s pool. When compared to other cases where a caregiver’s acts constituted culpable negligence, the State’s evidence was insufficient to send this case to the jury.
For instance, in Ramos v. State, 89 So.3d 1119 (Fla. 1st DCA 2012), this Court upheld the conviction of a mother for aggravated manslaughter of a child by culpable negligence where her nineteen-month-old child drowned in a retaining pond. The State presented evidence that the mother had frequently and repeatedly failed to supervise her child in the months leading up to the child’s death. Neighbors had saved the child from danger before when he was roaming outside alone; neighbors had often found the child near the retaining pond and had taken him back to his inattentive mother who continued— even when he was returned to her apartment — to ignore and neglect him. Another neighbor had saved the child from drowning at the apartment pool complex when he played there with no supervision and fell into the spa. This Court concluded that in these circumstances, the totality of the mother’s conduct on the day the child died, as well as the past neglect and indifference showing a pattern of egregious behavior, “was sufficient to create a jury question of whether [the mother] was culpably negligent in breaching her duty” toward the child. The evidence was sufficient for a jury question because her repeated lack of supervision — especially where her child had frequently been unsupervised while close to the retention pond where he ultimately died — was quite likely to result in severe injury or death.
In State v. Nowlin, 50 So.3d 79 (Fla. 1st DCA 2010), we reversed the dismissal of a charge of neglect of a child with great bodily harm where a two-year-old was mauled by the babysitter’s pit bull. A critical issue was whether the babysitter was culpably negligent where the dog had bitten another child six months before, the babysitter signed paperwork about the previous incident as required by animal control officers, and the child’s mother had directed the sitter to care for the child in the child’s home, not the sitter’s home due to the dog’s presence there. This Court found the State had made a prima facie showing of culpable negligence where it established the babysitter’s “reckless indifference or grossly careless disregard for the safety of the two-year-old child in her care.” Nowlin, 50 So.3d at 83. Under those circumstances, the facts were sufficient to infer the caregiver’s awareness that serious physical injury was likely to befall that child.
In State v. Brooks, 17 So.3d 1261 (Fla. 2d DCA 2009), the evidence showed that the mother left her children, aged nine months and two years, unsupervised in a bathtub for up to 40 minutes with the bath water running. She had intended to return to the children quickly, but became involved visiting with her aunt in another room and “lost track of time.” The nine-month-old drowned. The jury found the mother not guilty of manslaughter (by culpable negligence) of the infant, but guilty of the lesser included offense of negleet of a child by culpable negligence regarding the older child. After the jury verdict, the *252 trial court granted JOA but the appellate court reversed. The Second District Court of Appeal found the evidence sufficient to support the charge of child neglect by culpable negligence and thus sufficient to support the jury’s verdict. Because the evidence showed that the mother left the very young children in an inherently dangerous situation — a tub with running water for up to forty minutes — her degree of negligence was equivalent to an intentional act. Serious bodily injury or death was likely to occur in that situation.
Finally, although not a manslaughter case, dismissal of a charge of child neglect by willful or culpably negligent act was reversed in State v. Wynne, 794 So.2d 642 (Fla. 2d DCA 2001). There, the father and caretaker of the six-year-old stopped on an exit ramp for 1-295 and Hillsborough Avenue in the city of Tampa. As punishment for fighting with another child in the vehicle, the father removed the boy from the car, left him alone on the interstate ramp, and drove away. Such egregious conduct was certainly likely to result in serious physical injury or death to the child. The court noted that “the evidence established] that Wynne acted willfully or with culpable negligence in creating this dangerous situation.” Wynne, 794 So.2d at 644.
Compared to the inherently dangerous situations and repeated courses of conduct described in the cases above, even if the State’s evidence at the close of its case had been sufficient to withstand the first motion for JOA in this case, the motion presented at the close of all the evidence should have been granted. After the State’s own witnesses offered some evidence of Appellant’s motive and state of mind when she left the children at home, the defense offered additional evidence that Appellant’s negligence did not rise to culpable negligence. Appellant’s hospital co-worker described the ordinary childcare arrangements between the families and how these arrangements fell through on the night of the deaths. Appellant’s testimony was consistent with the testimony of the officers about her state of mind when she left the children and her belief that her husband, the children’s father, was only minutes away. She also testified that her duties at the hospital did not allow her to call her husband again until 8:40 p.m., when he again assured her he was almost home. She stated that the children were not mischievous or disobedient, had never expressed an interest in the neighbor’s pool, and were afraid of the neighbor’s dog. Appellant testified that she left the children inside the home with a video playing, instructed them to stay inside and told them their father would be there soon. She had never known the children to “escape” from the home and wander about.
At the close of all the evidence, the motion for JOA due to the lack of proof of the State’s prima facie case for culpable negligence — in other words, negligence so severe as to equate to an intentional exposure to danger likely to cause serious injury or death — should have been granted. When the elements of a crime have not been proven by competent substantial evidence, the trial judge may not simply overlook the dearth of evidence and send it to the jury to see what might happen. “Clearly if the evidence is not sufficient to support the elements of the alleged crime, the trial court cannot simply decide to submit the case to the jury anyway.” Jones v. State, 790 So.2d 1194 (Fla. 1st DCA 2001).
During trial and at oral argument, the State’s theory was that Appellant’s behavior amounted to wanton and reckless behavior sufficient to constitute culpable negligence because when a child is left unsupervised, “anything is foreseeable” and *253 “anything might happen.” The possibility that “anything might happen,” no matter how attenuated or unforeseeable, does not support a conclusion that Appellant was culpably negligent. The horrific result of the bizarre chain of events presented in this case is not a proper basis upon which Appellant’s negligence may be magnified to the level of culpable negligence.
To presume that one is culpably negligent because “anything might happen” makes manslaughter by culpable negligence a strict liability crime, dependent upon the end result and regardless of the defendant’s actions and mental processes. An isolated miscalculation where there is no evidence that the parent was otherwise recklessly or grossly careless under the facts she believed at the time does not establish a prima facie case of culpable negligence even where, as here, the end result is an unimaginable tragedy costing the lives of both of this family’s children. To hold a caregiver culpably negligent for “anything [that] might happen” whenever children are left unsupervised, without regard for a caregiver’s state of mind, mistaken belief of the situation, or any other factor affecting the defendant’s thought process negates any requirement of “a state of mind so wanton or reckless that the behavior it produces may be regarded as intentional.” Bowen v. State, 791 So.2d 44 (Fla. 2d DCA 2001); see also Sexton v. State, 898 So.2d 1187 (Fla. 1st DCA 2005).
In fact, at oral argument for this ease, the State advanced the strict liability standard to its logical conclusion. The Court inquired of the State if leaving two young children with no history of “escape” or any other indicia of mischievousness — like the children in this case — home alone for ten minutes to procure medicine would constitute culpable negligence. The State answered that no matter what event occurred, leaving the children was sufficient evidence of heightened culpable negligence to go to a jury. With this, I cannot agree. The key is not whether Appellant was negligent. Instead, the sole and determinative question is whether her negligence rose to the necessary heightened standard of egregiousness and wantonness, evincing indifference towards the death of the children. That question must be answered in the negative.
The State’s evidence was insufficient for a prima facie showing of the necessary element of culpable negligence and the trial court erroneously denied JOA. I would reverse the judgment and sentence.